## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEADFAST INSURANCE COMPANY,<br>1400 American Lane<br>Schaumburg, Illinois | :    CIVIL ACTION NO.<br>:<br>:<br>: |
| Plaintiff, | : |
| v. | :<br>: |
| ROGER WILLIAMS MEDICAL CENTER,<br>INC.,<br>825 Chalkstone Avenue<br>Providence, Rhode Island | :<br>:<br>:<br>: |
| Defendant. | :<br>: |

## COMPLAINT FOR DECLARATORY RELIEF

Steadfast Insurance Company ("Steadfast"), by and through its counsel, hereby

brings this Complaint against Defendant Roger Williams Medical Center, Inc.

("RWMC"), and alleges as follows:

### NATURE OF THE CASE

1.      This is an insurance coverage dispute.  Steadfast seeks a declaration of

non-coverage from this Court in connection with an underlying lawsuit alleging medical

negligence against its insured, RWMC, and other defendants.  In the months leading up

to trial of that matter, RWMC and its primary carrier declined multiple opportunities to

settle the lawsuit at an amount below the Steadfast policy's two million dollar attachment

point.  RWMC failed to inform Steadfast of any of these opportunities.  Even more

egregious is that RWMC never informed Steadfast of any opportunities to settle or even advise it of the upcoming trial. Steadfast was kept in the dark about this matter until well after the insured had an adverse verdict against it and its motion for a new trial was denied.

2.      Nearly five years earlier, RWMC had provided Steadfast with a copy of its initial notice of claim to its primary carrier. But after that, RWMC never made another attempt to keep Steadfast apprised of developments in the matter, including developments related to settlement discussions and demands. Indeed, RWMC failed even to notify Steadfast that the lawsuit was going to trial, where the claim was reasonably likely to reach Steadfast's layer of coverage. Instead, without informing Steadfast, RWMC and its primary carrier chose to proceed to trial, and then to verdict, effectively "rolling the dice" with Steadfast's money.

3.      The jury ultimately found that RWMC was solely negligent, awarding monetary damages against it in the amount of $5.5 million. With pre-trial interest, the total judgment is $8,595,671.23.

4.      RWMC now seeks coverage from Steadfast for the portion of the $8,595,671.23 judgment in excess of the Steadfast policy's $2 million attachment point.

5.      By failing to notify Steadfast of settlement negotiations and demands, and by failing to inform it that the lawsuit was going to trial and was reasonably likely to reach Steadfast's layer of coverage, RWMC breached the notice and cooperation provisions in Section VII(M) of the Steadfast policy, which are conditions precedent to coverage, resulting in prejudice to Steadfast.

6.      A real and actual controversy exists between Steadfast and RWMC.

7.     Accordingly, Steadfast seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no obligation to defend or indemnify RWMC.

## THE PARTIES

8.     Plaintiff, Steadfast, is a Delaware corporation with its principal place of business located in Schaumburg, Illinois. Steadfast is a subsidiary of Zurich American Insurance Company ("Zurich"), a New York corporation with its principal place of business also located in Schaumburg, Illinois.

9.     Defendant, RWMC, is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $150,000, exclusive of interests and costs.

11.     Venue is proper in the District of Rhode Island under 28 U.S.C. § 1391 in that Defendant resides in this district and/or a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

### A.     Underlying Claim

12.     According to the materials provided to Steadfast, on August 10, 2010, Dr. Prakash Sampath performed spinal surgery on Elaine D. Willard at RWMC.

13.     Two weeks later, during Ms. Willard's follow-up examination at Dr. Sampath's clinic, a physician's assistant expressed concern about fluid collecting below her lumbar spine and instructed her to have the fluid tested to rule out a spinal infection.

14.     The next morning, Ms. Willard visited Dr. Earle Assanah at RWMC.  Dr. Assanah drew a small amount of spinal fluid, placed the specimen in a container, and sent it to RWMC's in-hospital laboratory department for testing.

15.     Although the test results immediately showed the presence of bacteria, this information was not communicated to Ms. Willard until two days later.  According to the complaint in the underlying during this delay, Ms. Willard's condition deteriorated and, by August 28, doctors needed to perform emergency spinal surgery to address the infection.

16.     On October 6, 2011, Elaine D. Willard filed a complaint in Rhode Island Superior Court against Dr. Sampath, Dr. Assanah, Pamela M. Bagdasian, P.A., and RWMC, No. PC 11-5776 (the "*Willard* Claim"), alleging medical malpractice arising out of defendants' alleged delay in notifying her of the test results.  A copy of the complaint is attached hereto as Exhibit A.

**B.     Insurance Coverage**

17.     Steadfast issued a Health Care Umbrella Liability Policy, No. HPC 6692617 00, to RWMC for the Policy Period of October 1, 2010 to July 1, 2012 (the "Steadfast Policy").  A copy of the Steadfast Policy is attached hereto as Exhibit B.

18.     The Steadfast Policy's limits are $10 million excess of a ProSelect Professional Liability Policy, No. 2-21618FPL1, which has limits of $2 million each medical incident and $6 million aggregate (the "ProSelect Policy").

19.     The Steadfast Policy includes the following insuring agreements:

**A. Coverage A—Health Care Professional Liability Insurance**

**Indemnity and Automatic Extended Reporting**

1.  Under **Coverage A**, we will pay on behalf of the **insured** those
    sums that the **insured** becomes legally obligated to pay as damages
    because of injury caused by a **medical incident** to which this
    insurance applies.  We will pay only such damages that are in
    excess of the Retained Limit specified in Item 4. of the
    Declarations [$100,000] or that are in excess of the applicable
    **underlying limit** [$2 million], whichever is greater. . . .

    \* \* \*

    **Coverage B** does not apply to any claim for which insurance is
    afforded under **underlying insurance** or would have been afforded
    except for the exhaustion of the Limits of Insurance of **underlying
    insurance**.

    \*\*\*

**C.  Coverage C—Excess Follow Form Liability Insurance**

Under **Coverage C**, we will pay on behalf of the insured those sums in
excess of the total applicable limits of **underlying insurance** that the
**insured** is legally obligated to pay as damages to which this insurance
applies.  With respect to **Coverage C**, this policy includes:

1.  The terms and conditions of **underlying insurance** except where
    such terms and conditions are inconsistent or conflict with the
    terms and conditions referred to in paragraph 2 below; and

2.  The terms and conditions that apply to **Coverage C** of this policy.

Notwithstanding anything to the contrary contained above, if **underlying
insurance** does not apply to damages, for reasons other than exhaustion of
applicable Limits of Insurance by payment of **claims**, then **Coverage C**
does not apply to such damages.

We will pay such damages in excess of the total limit of underlying
insurance.

Zurich Policy, Section I, Insuring Agreements.

20.  The Steadfast Policy includes the following provisions regarding defense:

A.  We have the right and duty to assume control of the investigation and
    defend and settle any claim to which this insurance applies.

1.  Under **Coverage A** and **Coverage B**, when damages are sought for
    a **medical incident**, **bodily injury**, **property damage** or **personal**

5

**and advertising injury** to which no **underlying insurance** or **alternative insurance** applies; or

2.     Under **Coverage C**, when the applicable limit of **underlying insurance** has been exhausted by payment of claims.

*Id.*, Section III.A.

21.     The Steadfast Policy also contains certain provisions regarding RWMC's duty to cooperate with Steadfast in the investigation and settlement of claims and to otherwise provide timely notice of claims and demands, including the following:

1.     You must see to it that we are notified as soon as practicable in writing of a medical incident, an occurrence, offense, or a claim which may result in damages covered by this policy that has a reserve, settlement value or demand of greater than 25% of the applicable underlying limit. . . .

2.     *If a claim against any insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable*.

3.     You and any other involved insured must:

a.     *Immediately send us copies of any demands*, notices, summonses or legal papers received in connection with the claim; …

c.     *Cooperate with us in the investigation, settlement or defense of the claim*; and

d.     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

*Id.*, Section VII.M (emphases added).

C.     **Initial Notice of Claim**

22.     On October 12, 2011, Joyce C. Hackley, RWMC's director of risk management, reported the *Willard* Claim to RWMC's primary insurer, ProSelect, and purported to enclose other information regarding Ms. Willard's treatment at RWMC. The letter "cc'd" Nancy Morel of Zurich. *See* Exhibit C attached hereto.

23.     Two days later, Rita Hamilton acknowledged Steadfast's receipt of Ms. Hackley's letter, stating that Ms. Morel, the Zurich claims professional assigned to the matter, would contact RWMC after she had the opportunity to review the information received. *See* Exhibit D attached hereto.

24.     In an October 24, 2011 letter to RWMC's risk management coordinator, Elaine Moeller, Ms. Morel acknowledged receipt of notice of the *Willard* Claim and requested a copy of the complaint. *See* Exhibit E attached hereto. She further stated that, given the information provided to date, the matter was unlikely to impact Steadfast's layer of coverage, but asked to be kept apprised of any significant developments:

> It appears this matter involves a patient that had complications post lumbar surgeries. It appears that the patient has filed suit. Could you please provide me with a copy of the lawsuit? At this time, given the information provided, I do not think this matter will impact our layer of coverage; therefore, I will not be actively monitoring this matter. Please advise me if there are any significant developments in this matter.

*Id.*

25.     RWMC never responded to Steadfast's request for a copy of the complaint.[1] Nor did it provide Steadfast with any further information regarding the

---

[1] On December 9, 2014, Ms. Willard filed an amended complaint. RWMC failed to provide Steadfast with a copy of that pleading as well. A copy of the amended complaint is attached hereto as Exhibit F.

*Willard* Claim.  Indeed, RWMC did not communicate again with Steadfast until after the jury returned a $5.5 million verdict, nearly five years later.

### D.   Settlement Communications and Jury Verdict

26.   Upon information and belief, ProSelect retained William F. White, Esquire, to defend RWMC in the *Willard* Claim.

27.   The case did not go to trial until May 2016.  Based on the information Steadfast received following the verdict, it is clear that in the months leading up to trial, RWMC had several opportunities to settle below Steadfast's policy limits.

28.   For example, on March 15, 2016, counsel for Ms. Willard tendered two settlement demand letters to RWMC's defense counsel, Mr. White.  One letter was directed to counsel for all defendants, including RWMC, and one was directed solely to Mr. White.  The letter to all defendants offered to "settle this case globally with all defendants for $4 million."  *See* Exhibits G and H attached hereto.

29.   The letter directed solely to RWMC's defense counsel offered to settle all claims asserted against it for "policy limits"—*i.e.*, $2 million:

> My client has authorized me to settle all claims against your client, Roger
> Williams Medical Center, for payment of the policy limits of the
> professional liability insurance coverage available to it/him for the claims
> asserted in this matter.  If a settlement agreement is reached for the policy
> limit, my client will execute a Joint Tortfeasor Release in favor of your
> client.  If your client's insurance carrier/entity refuses to pay its insured's
> policy limits and a Judgment is obtained after trial which exceeds the
> limits of the insurance/indemnity coverage, my client intends to hold the
> carrier/entity responsible for the entire Judgment, including all pre-
> judgment and post-judgment interest, pursuant to *Asermely vs. Allstate
> Ins. Co.*, 728 A.2d 461, 464 (R.I. 1999) and all other applicable law.

*See* Exhibit H attached hereto.

30.     The letter directed solely to Mr. White further stated that if the case did not settle, Ms. Willard expected "to ask a jury for a total compensation award of $5 million, exclusive of interest" and that "[o]n the first day of trial, there will be accrued prejudgment interest of 55%." *See* Exhibit H attached hereto.

31.     In response to Ms. Willard's demand, defendants offered $250,000 to settle all claims.

32.     On the day of opening arguments, Ms. Willard reduced her demand to $3.75 million.  Defendants countered that with an offer of $500,000.

33.     RWMC did not inform Steadfast that it had received these demands to settle the matter within primary carrier's policy limits.  Nor did it inform Steadfast that if the case did not settle, Ms. Willard would seek damages well into Steadfast's layer of coverage.  Indeed, RWMC did not even inform Steadfast that the matter was going to trial.

34.     The trial ultimately centered on events that took place after Ms. Willard's spinal fluid was tested, two seeks after her spinal surgery in 2010.  In communications leading up to and during trial, RWMC and ProSelect made certain strategy decisions that exposed the hospital to greater liability and damages.  To avoid waiver of any privilege RWMC may contend exists, we are not setting forth such communications here.

35.     At no time was Steadfast informed of these strategy decisions.  Nor was it provided an opportunity to associate in the defense, or otherwise apprised of any events and facts implicating its layer of insurance coverage.

36.     During closing arguments, counsel for the doctors turned on RWMC, suggesting that RWMC was to blame because it failed to notify them after the test results

9

showed the presence of bacteria.  Once again, RWMC made no effort then or while the

jury was charged, while the jury was out, or at any other time before the jury returned a

verdict, to notify Steadfast regarding the troubling turn of events, which should have

buttressed the conclusion that Steadfast's layer of coverage was certainly exposed.

37.     The jury ultimately agreed with the doctors' position that RWMC was

solely to blame.  On June 13, 2016, it returned a verdict solely against RWMC, awarding

monetary damages to Ms. Willard in the amount of $5,500,000.  *See* Exhibit I attached

hereto.  With pre-trial interest, the total judgment amount is $8,595,671.23.  *See* Exhibit J

attached hereto.

38.     RWMC filed a motion for new trial/remittitur, which was denied, and is

now seeking an appeal before the Rhode Island Supreme Court.

### E.     Defense Counsel Informs Steadfast that the Willard Trial Resulted in a  Verdict Reaching Well into its Layer of Coverage

39.     On or about July 25, 2016, more than a month after the verdict, and after

the court denied RWMC's motion for a new trial, Mr. White informed Steadfast that the

matter was tried to a verdict that reached Steadfast's layer of coverage.  At Steadfast's

request, Mr. White then provided Steadfast with pleadings and other materials relevant to

the *Willard* claim, including a history of settlement offers and demands.

40.     In an August 17, 2016 letter to RWMC, Michael Haskin, on behalf of

Steadfast, noted that neither ProSelect nor RWMC made any effort to keep it apprised of

settlement negotiations, let alone the possibility that the claim might reach Steadfast's

layer of coverage.  *See* Exhibit K attached hereto.  Because of this, Steadfast expressly

reserved all rights under the Steadfast Policy, including rights under the notice and

cooperation provisions of Section VII.M, and requested that any future communications or inquiries be directed to coverage counsel. *Id.*

41.     RWMC did not immediately respond to that letter.  In a September 12 email to Mr. Haskin and other Zurich representatives, however, Mr. White asked "where Zurich stands on this case, be it 1) potential avenues of appeal, as you indicated you were exploring, or 2) resolution satisfying the judgment/settlement/mediation, etc.?"

42.     Mr. Haskin responded as follows:

> Bill,
>
> You asked us to address with you Zurich's position on settlement and on appellate issues, presumably because you have been told to look to Zurich now for authority or direction.  We are not addressing insurance coverage issues with you, as we understand that as defense counsel for Roger Williams Medical Center in the Willard matter, your role is to defend Roger Williams and handle the appeal, not get involved in the coverage issues.  Since ProSelect (Coverys) continues to have an obligation to defend Roger Williams, and since you have been reporting to Roger Williams and ProSelect from the beginning, you should continue to look to them for guidance.  We will address coverage issues separately with Roger Williams and ProSelect.  If instead you have now been retained to represent Roger Williams on coverage issues, please so advise . . . .

43.     In a September 26 letter to Steadfast's coverage counsel, RWMC's coverage counsel, Robert Fine, took issue with Mr. Haskin's August 17 email, asserting that ProSelect, not RWMC, should be responsible for any failures to communicate with Steadfast. *See* Exhibit L attached hereto.  According to Mr. Fine, "RWMC cooperated fully and met its obligations under the policy, and has every right to be held harmless in this situation and will undertake whatever steps are necessary to protect and enforce that right." *Id.*  But Mr. Fine never challenged Steadfast's specific statements regarding failures to provide notice to, or cooperate with, Steadfast.

44.     By failing to notify Steadfast of settlement negotiations and demands, among other things, and by failing to inform it that the lawsuit was going to trial and was reasonably likely to reach Steadfast's layer of coverage, RWMC substantially and materially breached the notice and cooperation provisions in Section VII(M) of the Steadfast Policy.

45.     Steadfast has been prejudiced as a result of RWMC's breaches of those provisions.  Had it been permitted to participate in settlement discussions and strategy, Steadfast could have taken steps that likely would have affected the outcome, thereby significantly limiting the exposure.  At the very least, Steadfast would have had an opportunity to attempt to protect its interests.

46.     Because RWMC now seeks coverage from Steadfast, including indemnity for the portion of the $8,595,671.23 judgment in excess of the Steadfast's policy's $2 million attachment point, and because Steadfast maintains that coverage is barred based upon RWMC's substantial and material breach of the Steadfast Policy's notice and cooperation provisions, an actual controversy exists between Steadfast and RWMC, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. § 2201.

47.     Therefore, Steadfast now seeks a declaration that it is no duty to defend or indemnify RWMC.

## COUNT I
### (Declaratory Judgment—Breach of Notice Provision)

48.     Steadfast incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

49.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Steadfast seeks a judicial determination of the rights and duties of the parties under the Steadfast Policy.

50.     The Steadfast Policy provides that "[i]f a claim against any insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable." Steadfast Policy, Section VII(M)(2).

51.     On March 15, 2016, more than two months before trial, counsel for Ms. Willard informed RWMC's defense counsel that, if the case did not settle, he expected "to ask a jury for a total compensation award of $5 million, exclusive of interest" and that "[o]n the first day of trial, there will be accrued prejudgment interest of 55%."

52.     The Steadfast Policy's attachment point is $2 million.

53.     RWMC breached Section VII(M)(2) of the Steadfast Policy by failing to notify Steadfast of this communication from Ms. Willard—or provide any other information that the claim against it was reasonably likely to involve the Steadfast Policy—until June 13, 2016, *after* the jury had returned a $5.5 million verdict against RWMC.

54.     RWMC's failure to advise Steadfast that the claim was reasonably likely to involve the Steadfast Policy prejudiced Steadfast's rights.

55.     A real and actual controversy exists between Steadfast and RWMC concerning whether RWMC is obligated to defend and/or indemnify RWMC.

56.     The issuance of declaratory relief by this Court will resolve the existing controversy between the parties as alleged herein.

**WHEREFORE**, Steadfast requests that judgment be entered in its favor and against the Defendant, RWMC, and asks this Court to:

A.     Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the Steadfast Policy;

B.     Determine, decide, adjudicate and declare that Steadfast has no duty to defend and/or indemnify RWMC in connection with the Underlying Litigation and/or Claim because RWMC failed to provide timely notice in writing that the Claim was likely to involve the Steadfast Policy; and

C.     Grant to Steadfast any such other and further relief which this Court deems just and proper, including a determination that there is no coverage under the Steadfast Policy.

## COUNT II
### (Declaratory Judgment—Breach of Notice Provision)

57.     Steadfast incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

58.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Steadfast seeks a judicial determination of the rights and duties of the parties under the Steadfast Policy.

59.     The Steadfast Policy provides that "You and any other involved insured must: a. *Immediately send us copies of any demands*, notices, *summonses or legal papers received* in connection with the claim;. . . ."  Steadfast Policy, Section VII(M)(3)(a) (emphases added).

60.     On October 24, 2011, after RWMC provided initial notice of the *Willard* Claim, Steadfast requested a copy of the complaint and asked to be kept apprised of any other significant developments.  RWMC never responded to Steadfast's request for a copy of the complaint.  Nor did RWMC provide Steadfast with any further information

regarding the *Willard* Claim—including multiple demands to settle at or below Steadfast's Policy limits—until nearly five years later, *after* the jury had returned a $5.5 million verdict against RWMC.

61.    By failing to immediately send copies of legal papers and settlement demands, RWMC breached Section VII(M)(3)(a) of the Steadfast Policy, which is a condition precedent.

62.    RWMC's failure to immediately send copies of legal papers and settlement demands prejudiced Steadfast's rights.

63.    A real and actual controversy exists between Steadfast and RWMC concerning whether RWMC is obligated to defend and/or indemnify RWMC.

64.    The issuance of declaratory relief by this Court will resolve the existing controversy between the parties as alleged herein.

**WHEREFORE**, Steadfast requests that judgment be entered in its favor and against the Defendant, RWMC, and asks this Court to:

A.    Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the Steadfast Policy;

B.    Determine, decide, adjudicate and declare that Steadfast has no duty to defend and/or indemnify RWMC in connection with the Underlying Litigation and/or Claim because RWMC failed to immediately send copies of legal papers and settlement demands; and

C.    Grant to Steadfast any such other and further relief which this Court deems just and proper, including a determination that there is no coverage under the Steadfast Policy.

## COUNT III
## (Declaratory Judgment—Breach of Cooperation Clause)

65.     Steadfast incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

66.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Steadfast seeks a judicial determination of the rights and duties of the parties under the Steadfast Policy.

67.     The Steadfast Policy provides that "You and any other involved insured must: . . . c. *Cooperate with us in the investigation, settlement or defense of the claim*;. . . ." Steadfast Policy, Section VII(M)(3)(c) (emphasis added).

68.     On October 24, 2011, after RWMC provided initial notice of the *Willard* Claim, Steadfast requested a copy of the complaint and asked to be kept apprised of any other significant developments.  RWMC never responded to Steadfast's request for a copy of the complaint.  Nor did RWMC provide Steadfast with any other information regarding the *Willard* Claim—including multiple demands to settle at or below Steadfast's Policy limits— until nearly five years later, *after* the jury had returned a $5.5 million verdict against RWMC.

69.     RWMC's failure to immediately send copies of legal papers and settlement demands constitute a substantial and material breach of Section VII(M)(3)(c) of the Steadfast Policy, which is a condition precedent.

70.     RWMC's failure to cooperate prejudiced Steadfast's rights.

71.     A real and actual controversy exists between Steadfast and RWMC concerning whether RWMC is obligated to defend and/or indemnify RWMC.

72.     The issuance of declaratory relief by this Court will resolve the existing controversy between the parties as alleged herein.

**WHEREFORE**, Steadfast requests that judgment be entered in its favor and against the Defendant, RWMC, and asks this Court to:

A.      Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the Steadfast Policy;

B.      Determine, decide, adjudicate and declare that Steadfast has no duty to defend and/or indemnify RWMC in connection with the Underlying Litigation and/or Claim because RWMC breached the Steadfast Policy's cooperation clause; and

C.      Grant to Steadfast any such other and further relief which this Court deems just and proper, including a determination that there is no coverage under the Steadfast Policy.

Respectfully submitted,

*/s/Scarlett M. Rajbanshi*
Michael P Duffy, #4776
PEABODY & ARNOLD LLP
40 Westminster Street, Suite 201
Providence, Rhode Island 02903
(401) 521-3724
(617) 951-2125 facsimile
mduffy@peabodyarnold.com

Scarlett M. Rajbanshi, #7800
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 951-2100
(617) 951-2125 facsimile
srajbanshi@peabodyarnold.com

Of counsel:

Ronald P. Schiller
Michael R. Carlson
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
(215) 568-0300 facsimile
rschiller@hangely.com
nrosenblum@hangley.com
mcarlson@hangley.com
(*pro hac vice* admissions pending)

Dated:  October 21, 2016

987190_1